USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/14/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

UNITED STATES OF AMERICA,            :

   -against-                                       :          07 Cr. 880 (PAC)

CAMILO REBOLLEDO-DUQUE and    :          ORDER
JOSE RICAUTE COBO,
                                                          :
                      Defendants.
                                                          :
------------------------------------------------------x

HONORABLE PAUL A. CROTTY, United States District Judge:

On January 10, 2008, the defendants entered pleas of guilty to a two-count indictment charging, them with (1) a conspiracy in violation of 21 U.S.C. § 846 to distribute, and possess with intent to distribute, at least 100 grams of mixtures and substances containing a detectable amount of heroin; and (2) a substantive narcotics charge, 21 U.S.C. § 841(b)(1)(B), that defendants knowingly and intentionally possessed with intent to distribute at least 100 grams of mixtures and substances containing a detectable amount of heroin. Defendants Cobo and Rebolledo-Duque admitted they were involved in a transaction involving 750 grams of heroin in Manhattan on August 23, 2007.

The plea agreements calculated a guideline range of 70-87 months for each defendant, with a mandatory minimum of 5 years imprisonment. Sentencing was scheduled for June 10, 2008. Prior to that date, however, both defendants participated in safety valve proffer sessions.[1]

---

[1] Cobo's proffer session was held on March 21, 2008; Rebolledo-Duque's proffer session was held on May 13, 2008.

The Government concedes that defendants met the threshold criteria set forth in 18 U.S.C. § 3553(f)(1)-(4) and U.S.S.G. § 5C1.2:

(1) neither defendant has any criminal history points;

(2) violence, threat of violence, or a gun were not used in connection with the offense charged in the indictment;

(3) no one was killed or seriously injured;

(4) neither defendant was an organizer or leader and neither was engaged in a continuing criminal enterprise.

The Government maintains, however, that neither defendant has "truthfully provided to the Government all information and evidence the defendant has concerning the offense" charged. 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2. Accordingly, the Government urges that the defendants are not entitled to safety valve relief.

An evidentiary hearing was held on July 15, 2008. The Court advised the defendants that they had to prove by a preponderance of the evidence that they had truthfully told all they could tell about the offenses charged in the indictment in order to be eligible for safety valve treatment. (See Transcript of July 15, 2008 Hearing ("Tr.") 3-5.)[2] Both defendants testified.

The Government submitted a post-hearing brief on July 24, 2008, arguing that neither party had testified credibly, and that neither defendant was eligible for safety valve treatment. In submissions dated July 28, 2008 (Cobo) and July 31, 2008

---

[2] The Court advised that it was relying on the decision of Judge Lawrence J. McKenna in U.S. v. Jimenez, No. 02 Cr. 762 (LMM), 2004 WL 992582 (S.D.N.Y. May 5, 2004), aff'd. 451 F.3d 97 (2d Cir. 2006). (See Tr. 3.)

2

(Rebolledo-Duque), the defendants maintained that each had satisfied their burden by testifying honestly and completely concerning their involvement in the offense charged.

The Court finds that neither defendant has carried his burden of proof. Cobo's testimony was not credible and Rebolledo-Duque's testimony was contradictory and in many ways, incomprehensible. Rebolledo-Duque's counsel concedes that his testimony was not compelling.[3]

### COBO'S TESTIMONY

Cobo testified that he played soccer on Saturdays in Queens, where one of the players was nicknamed "El Rolo," but he did not know his real name. (Tr. 11.) Since Cobo needed money for family obligations and his business (installing and repairing electric systems in automobiles) was doing badly, he asked "El Rolo" for a $2,000 loan; Cobo offered some personal jewelry as collateral. (Tr. 12-13.) "El Rolo" told him to call him on the following Monday. (Tr. 13.) When he called on Monday, "El Rolo" said he had not gotten the money, but Cobo should call again on Wednesday. (Tr. 14.) When they spoke on Wednesday, "El Rolo" suggested that a face-to-face meeting was necessary. He proposed that Cobo could make $1,500 transporting something. Cobo knew he would be delivering drugs—namely, heroin. (Tr. 14-15.) The two met on Thursday when "El Rolo" gave him the heroin in a plastic bag pressed between some newspapers. (Tr. 17.) "El Rolo" gave him a cell phone and told him to call a number. (Tr. 17.) The purpose of the call was to reach an agreement to take the drugs. (Tr. 17-18.) When Cobo called, he spoke to Rebolledo-Duque, who he had previously met at a

---

[3] Rebolledo-Duque's counsel states that after page 50 of the transcript of the July 15, 2008 hearing, Rebolledo-Duque became "incoherent, and inconsistent and self contradictory." (Letter of Defense Counsel dated July 31, 2008 at 2.) Counsel attributes this to the defendant's "having become tired, having lost his power of concentration," but denies that he was lying. (Id.)

cookout in Queens. (Tr. 10.) Rebolledo-Duque and Cobo met in Queens and Rebolledo-Duque said that the drugs had to be taken to Manhattan. (Tr. 19.) When they arrived in Manhattan, at the place specified by Rebolledo-Duque (34th Street at 10th Avenue), Rebolledo-Duque got out to meet another person. (Tr. 19-20.) He called Cobo so that he could hand over the drugs, but at that point, the officers arrived and he was arrested. (Tr. 20.) Cobo said he did not have any idea how much money the heroin was being sold for, except that he believed if he lost or stole the drugs he could be killed. (Tr. 20.)

### REBOLLEDO-DUQUE'S TESTIMONY

Mr. Rebolledo-Duque testified that he had a maintenance job; his supervisor was Miguel Mendez. (Tr. 37.) Rebolledo-Duque said he needed money for his wife's eye operation and asked Mendez for a loan of $3,000. (Tr. 38.) He declined; but offered to introduce Rebolledo-Duque to Mendez's friend who wanted to get drugs, specifically heroin. (Tr. 40.) Mendez introduced him to Carlos in Queens, and Carlos turned out to be the informant. (Tr. 42.) Carlos said he wanted at least 500 grams and was willing to pay up to $60/gram. (Tr. 42.) Rebolledo-Duque then tried to procure these drugs. (Tr. 43.) He went to Roosevelt Avenue and spoke to a person called "Flaco" who he had been told was a drug dealer. "Flaco" gave him a phone number to call. (Tr. 44.) When he called the number, a man answered and Rebolledo-Duque said he was calling, as "Flaco" suggested. The man asked for a phone number and someone called back with a meeting place. (Tr. 45.) He met with "Jose Cobo." (Tr. 46-48.). The two of them discussed the drug transaction; Rebolledo-Duque wanted to fill Carlos' order for heroin and Cobo was the source of supply. (Tr. 49-50.) Rebolledo-Duque had met Cobo at a

barbeque in Queens two months before the drug transaction. (Tr. 50.) The next time the two met was the day of the drug transaction. (Tr. 51.)

As defense counsel concedes, see supra note 3, starting at page 50 of the July 15, 2008 transcript, Rebolledo-Duque's testimony becomes difficult to follow. After testifying that he did not meet Cobo after the barbeque until the day of the drug transaction, he then testified he met Cobo the day before; his recollections of his meetings and conversations with Cobo were confusing. (Tr. 54-58.) Mr. Rebolledo-Duque said he had specified the amount of heroin he wanted to buy to the man he spoke with on the phone, but he discussed neither quantity nor price with Cobo. (Tr. 64, 66.)

### FINDINGS:  COBO

The Court cannot accept as credible that Cobo was entrusted with almost $50,000 worth of heroin by a man whom he knew only by a nickname; did not know where he lived; where the relationship (if any) was based solely on a pick-up soccer game played on Saturdays in Queens by an otherwise unaffiliated group of older men from Latin and South America. Further, this transaction is said to have taken place without any prior discussions between the defendant and "El Rolo" regarding the amount of drugs to be delivered, and even more incredibly, the dollar amount to be obtained for the drugs upon delivery.

Additionally, the Court finds that Cobo was evasive with regard to the identity of "El Rolo," and as to the timing, circumstances, and the identity of the people attending the barbeque in Queens before the transaction. For these reasons and for the arguments cited in the Government's letter of July 24, 2008, the Court finds that Cobo has failed to sustain his burden of proving by a preponderance of the evidence that he has

"truthfully provided to the Government all information and evidence the defendant has concerning the offense," and is not eligible for safety valve relief. 18 U.S.C. § 3553(f)(5).

## FINDINGS: REBOLLEDO-DUQUE

The Court finds that Rebolledo-Duque's testimony concerning this transaction is not credible. The idea that at the instigation of Carlos, Rebolledo-Duque could, in his very first drug transaction, walk up to a person otherwise unknown to him, nicknamed "Flaco," and engage in a conversation which results, after two phone calls, in 750 grams of heroin being made available by a drug courier, is not believable. The incredibility of the story told is further highlighted by the inconsistencies in Rebolledo-Duque's recounting of it; in one account he met Cobo only on the day of the transaction (Tr. 44-48), and at other times he met him on several prior occasions but to discuss automobiles, but not drugs (Tr. 57-59, 60-62).

It is difficult to avoid the conclusion that Rebolledo-Duque was evasive. He was, as his counsel admits, contradictory, confusing and not comprehensible. For these reasons, and the arguments cited in the Government's letter of July 24, 2008, the Court finds that Rebolledo-Duque has failed to sustain his burden of proving by a preponderance of the evidence that he has "truthfully provided to the Government all information and evidence the defendant has concerning the offense," and is not eligible for safety valve relief. 18 U.S.C. § 3553(f)(5).

## CONCLUSION

The defendants' request for safety valve relief pursuant to 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2(a) is DENIED. The sentencing is scheduled for September 3, 2008 at 4:30 p.m.

Dated: New York, New York
August 14, 2008

SO ORDERED

*[signature]*
PAUL A. CROTTY
United States District Judge

7